

**UNIFI**
*Companies*℠

Ameritas Life, Acacia Life, Union Central Life
and affiliated companies

# Branch Manager Contract

**For use with Branch Managers of the UNIFI Companies:**

Union Central Life Insurance Company

Ameritas Life Insurance Corp.

Acacia Life Insurance Company

First Ameritas Life Insurance Corp. of New York

ULC 47 Rev. 8-07

**EXHIBIT A**

EXHIBIT 1

AG00020751

CONT

# Branch Manager Contract

BRANCH MANAGER: _Jay Mulein_

| | |
|---|---|
| Parties to the Contract | This Contract is between the above named individual, herein called the Branch Manager, and the UNIFI Companies, more specifically referred to as follows: |

The Union Central Life Insurance Company ("Union Central") with respect to Union Central products; Ameritas Life Insurance Corp. ("Ameritas") with respect to Ameritas products; First Ameritas Life Insurance Corp. of New York ("FALIC") with respect to FALIC products; and Acacia Life Insurance Company ("Acacia"), with respect to Acacia products.

The words "company", "we", "our" and "us" refer to Union Central with respect to Union Central products, Ameritas Life with respect to Ameritas Life products, FALIC with respect to FALIC products, or Acacia with respect to Acacia products. You understand and agree that you are an agent of Union Central, not Ameritas Life, FALIC or Acacia, when you are selling Union Central products; that you are an agent of Ameritas Life, not Union Central, FALIC or Acacia, when you are selling Ameritas Life products; that you are an agent of FALIC, not Union Central, Ameritas Life or Acacia, when you are selling FALIC products; and that you are an agent of Acacia, not Union Central, Ameritas Life or FALIC, when you are selling Acacia products.

Duties    You agree to do the following while employed as our Branch Manager:

- To be exclusively employed by the Company, and not to represent any other insurance company in any capacity or other employment, without obtaining advance written permission from the Company;
- To be governed by all Company rules, regulations and instructions;
- To devote full time and efforts to the establishment and maintenance of a Branch Office Agency satisfactory to the Company, and to manage agency expenses in accordance with Company objectives;
- Solicit, or cause to be solicited, applications for our policies;
- To recruit, train, and supervise agents subject to Company approval, and to develop and retain productive new and experienced agents;
- Maintain proper records and accounts of business transacted under this Contract, including but not limited to, records of all written sales proposals made, applications taken, money collected, policies issued and delivered, and all service to policyowners on our behalf. All such records shall be made available to us or our representatives, with or without prior notice, during business hours;
- Act as trustee for our monies and promptly send us all you receive on our behalf in accordance with our policies and procedures;
- Secure and pay for and provide to us adequate proof of any licenses, securities registration, bond, and "Errors and Omissions" insurance coverage as may be required by us or the state or states where you are authorized to solicit insurance and/or securities;
- Promptly send us, by certified mail, notice of any legal document served upon you for actions brought against us;

- Deliver policies in accordance with our rules and regulations, and in accordance with the terms of the policy. No policy shall be delivered after the expiration of the delivery period specified by us unless you have received our prior approval. You will not deliver any insurance policy unless the proposed insured is, at the time of delivery, in the same health and insurable condition as represented in the policy application. You will promptly return to us all policies not delivered to the owner within the prescribed time period;
- Abide by all laws and regulations governing the sale and solicitation of insurance;
- Abide by all applicable federal and state privacy laws and regulations. Manager further agrees that the non-public personal information of all customers of any party obtained by virtue of this Contract shall remain confidential and shall not be used for any purpose whatsoever except as may be necessary to provide the services rendered under this Contract. In no event shall the non-public personal information of the customers or prospective customers be furnished to any other individuals, organizations, or institutions except (1) as required by the terms of this Contract, (2) as authorized by the customer or prospective customer, or (3) as may be required by law. This provision shall survive termination of this Contract. Manager agrees to indemnify and hold the Company harmless for any breach of this provision;
- Conduct yourself so as not to adversely affect the business reputation or good standing of either yourself or us;
- Abide by federal anti-money laundering laws and all Company policies and procedures relating thereto;
- Abide by all other applicable policies.

### Conduct & Relationship

You agree to be governed by this Contract and to observe and comply with the rules and regulations now in effect, or as amended as set forth by the Company, including but not limited to those rules and regulations described in manuals and bulletins we may issue, as well as those issued by state insurance departments. You further agree to be bound by the attached Compensation Supplement and Schedules as well as by any conditions in any Addenda to the Contract.

You hereby agree as follows:

- Upon termination for whatever reason, you will not, for a period of one (1) year subsequent to the date of such termination, either for yourself, or for any other firm, person, corporation, or association, directly or indirectly, solicit or contact in any way, any of our policyowners with whom you had a direct business relationship while contracted with the Company, with such contact resulting in the continuous and systematic replacement of our policy or policies with the policy or policies of another company. Such agreement by you is, however, specifically limited to the primary geographical area in which you solicited business while associated with us. Furthermore, you specifically acknowledge that we have a continuing proprietary interest in all of our policies, and that the purpose of this agreement is to prevent interference with such interest.

### Appointments

You may request appointment of properly licensed individuals to solicit applications for our policies. Individuals appointed must enter into a written contract with us on forms we provide.

We retain the right to approve, reject or terminate any appointments you may request without any liability to us.

We will be responsible for all agency expenses including rent, supplies, equipment, furniture, and the like. All personnel shall be our employees.

You certify that you have Errors and Omissions coverage currently in effect for yourself, and your employees or agents as required by the Company and that you will continue to maintain such coverage during the term of this Contract.

Limits of Authority

**You are not authorized to do the following:**
- Act on our behalf in any manner other than as stated in this Contract;
- Collect renewal premiums;
- Incur any indebtedness or liability not authorized in writing by the Company;
- Waive forfeitures;
- Waive or extend the time for payment of any premium;
- Withhold any of our monies or property;
- Rebate commissions;
- Commingle our funds, including gross premiums on business produced by you personally or by your Associates or Brokers, with any other funds;
- Accept premium payments in any form other than the policyowner's check made payable to the issuing Company;
- Endorse checks or other types of negotiable instruments on our behalf;
- Bind us to insure beyond what is stated in our Conditional Receipt, Temporary Insurance Agreement or policy of insurance;
- Deliver policies where the first premium has not been paid or the Insured is not in good health;
- Advertise our policies or name without our written permission;
- Alter, modify, waive, or change any of the terms, rates, or conditions of any of our advertisements, promotional materials, receipts, policies, contracts, or illustrations;
- Misrepresent or omit important facts in any application or supplemental material;
- Solicit or otherwise participate in any type of stranger owned or investor owned life insurance or in any other type of life settlement or viatical transaction contrary to Company policy.

Compensation & Vesting

Subject to and in accordance with the provisions of this contract, and any amendments, schedules and/or rules thereto, the Company shall pay to the Branch Manager, as full compensation for services rendered, the following amounts:

a) *Branch Manager Compensation:* Branch Manager compensation shall be paid as set forth in the attached Schedule of Compensation and any amendments thereto on policies issued and paid while this contract is in effect. Branch Manager compensation is not vested.

b) *Expense Allowance Payments:* The Company shall pay the Branch Manager an Expense Allowance on policies solicited by the Branch Manager and his/her agents under their contract with the Branch Manager as set forth in the attached Supplement. Expense Allowance payments are not vested.

We will pay you compensation in accordance with the attached schedules and supplements. We may change any of these schedules or supplements at any time without notice. Any such change will apply only to applications solicited after the effective date of such change.

We reserve the right to pay reduced compensation on a policy which, at the time of issue, causes us extra expense, or results in an additional premium for the insured due to: reinsurance; age of the insured; risk classification; size of the policy; or any other factor. We also reserve the right to pay reduced compensation if a new policy is issued and an

existing policy on the same life is terminated or lapses within six months prior to the date of the application for the new policy, or within twelve months after the issue date of the new policy.

### To individuals you appoint:

We will pay commissions directly to individuals you appoint. We will incur no liability to any individual appointed at your request for commissions or other compensation in excess of those appearing in the applicable commission schedule.

### Lien for debts:

You shall be liable to repay us, if you owe us money arising out of compensation we paid to you, including, but not limited to any compensation paid to you on premiums we have refunded; any debt that may have been incurred due to overpayment of annualized commissions, whether because they exceed an annual limit, because of a policy reversal, or otherwise; or a new policy when an existing policy we issued on the same insured has terminated within six months of the date of the new application or twelve months after the issue date of the new policy; an annuity, if we are required to pay a death benefit on the annuity (the greater of the premiums paid or the accumulation value to the policy beneficiary without surrender or withdrawal charges) within one year of the policy date. We may in our sole discretion, require the refund of the commission paid.

Any such refund shall be due and payable immediately. You affirmatively acknowledge and agree that any refund you make under this section can be netted (charged back/deducted) against/from any future compensation at the Company's discretion.

If you receive any payment or compensation to which you are not entitled, you agree that it will constitute a debt to us, and you will repay it immediately.

We may deduct and/or set off any amounts you owe us now or in the future, as a result of this or any other contract, from any compensation due you. You hereby assign, transfer and set over to us any monies that from time to time may become due to you from us under this Contract, or other active or cancelled contracts with us, to secure any debt to us. You agree to repay on demand any disbursements we make for any claims against you and any costs or attorney fees we incur associated with those claims as a result of transactions arising out of this Contract.

You authorize us to report to consumer reporting agencies and other credit organizations all information concerning any debts and advances not repaid in full by you. You acknowledge that such information may be provided to any insurance company with which you may seek appointment in the future.

### Policy years:

A policy year consists of 12 months, beginning on the effective date of the policy.

### Temporary extra ratings:

Commissions will be paid on temporary extra ratings of 10 or more years.

### Change, conversion, replacement, reinstatement:

If a policy is changed, converted, replaced, or reinstated, the amount of your commission payment will depend on current published procedures.

| General Provisions | **We reserve the right to:** |
|---|---|
| | - reject applications; |
| | - limit the amount or type of policies offered; |
| | - require higher premiums than applied for; |
| | - adjust, modify, or change any and all terms of this Contract, including provisions for commissions and/or compensation schedules of any kind; |
| | - withdraw or alter existing policy forms; |
| | - introduce new policies or procedures; |
| | - establish agencies and/or appoint representatives within the city and/or state in which you are licensed. |

### Background Check:

This Contract is contingent upon a completed background check, the results of which are satisfactory to us.

### Indemnification:

You agree to indemnify and hold the Company harmless for any and all expenses, costs, causes of action and/or damages resulting from or growing out of any unauthorized act or omission by you or your employees or agents.

### Assignment:

You may not assign any of your rights under this Contract without our written consent. We agree to consent, once, to an assignment of your rights to compensation, provided that at the time of such consent you are not indebted to us. We will not be responsible for, nor guarantee the validity or sufficiency of any assignment.

### No waiver of provisions:

Our failure to enforce any provision of this Contract does not constitute a waiver of that provision. In the event we do waive a provision, no precedent will be set and we may enforce that same provision in the future.

### Right to payment:

We have the right to suspend payment under the provisions of this Contract if you withhold property belonging to us after we have requested it from you. Property, for the purposes of this provision, will include but not be limited to, rate manuals, computer hardware and software and printed materials bearing our name or any trademark that we own.

### Amendments:

No modification or amendment to this Contract by you will be valid without our prior written consent.

### Rules:

We may make or change the compensation schedule and rules (e.g., underwriting procedures, compensation rate) governing your duties and payments under this Contract. These, when made available to you, become part of this Contract.

### Governing law:

This Contract will be governed by the laws of the State of Nebraska.

### Records:

We reserve the right to review, at any time during normal business hours, your records and accounts of business.

### Confidentiality:

You will treat all matters relating to our business as confidential information, and not divulge any information in any way to persons other than ourselves during or after the term of this Contract. You acknowledge that you may receive nonpublic personal information, whether financial information or health information from customers and/or consumers of the Company, and hereby agree that you will not further disseminate such information for any purposes not arising from and necessary to the performance of your obligations under this Contract; that you will restrict access to such information to those who are performing work under this Contract and take steps and measures to assure that such information remains confidential; and that you will comply with the privacy and security requirements of the Gramm-Leach-Bliley Act, the Health Insurance Portability and Accountability Act, the Fair Credit Reporting Act, and all other applicable federal and state laws and regulations respecting the privacy and security of customer/ consumer personal information.

### Advertising:

All advertisements, circulars and other material relating to our business which are intended for publication or distribution to the public by you must be submitted to us and receive written approval from us before being used.

### Notices:

Unless otherwise specified, any notices required under this Contract shall be in writing and delivered personally or mailed to the other party at their last known address.

## Termination

### Voluntary:

Notwithstanding any other provision in this Contract, either party can terminate this Contract by giving the other party advance written notice.

### Automatic:

This Contract will automatically terminate in the event of:

- assignment (other than as provided for under the assignment section) for the benefit of creditors;
- your death or you become physically or mentally disabled and are unable to perform your duties under the terms of this contract;
- insolvency or bankruptcy; or

If you are a partnership or a corporation, this Contract will terminate upon the occurrence of any event, which legally or contractually causes a dissolution of the partnership or termination of the corporation. Unless otherwise provided herein, we may continue to rely on this Contract as it existed before such dissolution until we receive formal written notice of such dissolution.

If conflicting demands are placed upon us because of such dissolution or otherwise, we will not be obligated to act until we are in receipt of non-conflicting demands.

**For Cause:**

All your rights under this Contract, including the right to any further payment of any type of compensation, either during, or after the termination of this Contract, shall automatically and completely cease if any of the following occur any time:

(1) You engage in any act of fraud, misconduct, or misrepresentation related to any actions taken by you under this Contract;

(2) You fail to promptly return upon demand our policy lists, records, and other property as set forth in this Contract;

(3) You systematically induce or attempt to induce policyholders to surrender our policies or to discontinue premium payments on any policies with us whether or not there has been compliance with any applicable governmental regulations concerning replacement;

(4) You directly or indirectly solicit, sell, or attempt to solicit or sell insurance products or any other services or products of another company to our policyholders, without having first obtained our written approval; or

(5) You commit any of the following acts:

   a. breach the terms of this Contract; or

   b. knowingly violate our rules and regulations; or

   c. violate any applicable insurance or securities or any other laws or regulations in the states in which you conduct business; or

   d. violate any Federal Securities Laws or any FINRA rules.

Upon termination of this contract, you agree to return any equipment, supplies, printed materials or other property, including but not limited to, policyholder lists and policyholder records, we furnished you. By agreeing to this term, you acknowledge that any policyholder lists or records in your possession are our property, and that the Company has a continuing proprietary interest in the lists and records relating to its policyholder.

Should you be terminated For Cause, you will be liable to us for any loss or damage, including attorney fees and costs, to which we may have been or will be subjected by virtue of such acts allowing termination. For purposes of determining whether this contract has been breached For Cause, the acts of all your employees or agents shall be deemed your acts.

Arbitration   Any controversy or claim in excess of $15,000.00 arising out of or relating to this Contract or any breach of this Contract, including any controversy or claim as to its arbitrability or recission, shall be finally settled by arbitration administered by the American Arbitration Association ("AAA") in accordance with its Commercial Arbitration Rules and the Federal Arbitration Act. If the AAA is not then in existence, the arbitration shall be governed by the Commercial Arbitration Rules last in effect. Any party seeking arbitration must give the other(s) 30 days written notice of that intent. A single United States arbitrator experienced in the life insurance and annuity industry, shall be mutually agreed upon by the parties within 15 days of receipt of a notice of intent or such longer period as mutually agreed upon by the parties. If an arbitrator can not be mutually agreed upon, the AAA shall select one. The arbitrator shall interpret this Contract pursuant to Nebraska law and shall base any decision or award on applicable law and judicial precedent. Any arbitration shall be conducted in Lincoln, Nebraska, unless the parties mutually agree to another location. The arbitrator(s) shall not, under any circumstances, have any authority to award punitive or exemplary damages.

All expenses associated with obtaining and utilizing the services of the AAA and the arbitrator, and as otherwise provided in the Commercial Arbitration Rules, shall be shared equally by the parties hereto, and the arbitrator shall request payment separately from each party for these expenses. Each party shall bear its own expenses of preparing for and participating in the arbitration, including attorney and witness fees and discovery costs.

The parties may engage in discovery, pursuant to the Federal Rules of Civil Procedure, to the extent such discovery is consistent with the purpose of the arbitration and is permitted by the arbitrator.

The decision or award of the arbitrator shall be final, binding, and enforceable. The decision of the arbitrator shall be in writing and shall set forth in reasonable detail the basis for the decision. Application may be made to any court of competent jurisdiction for judicial acceptance of the arbitration award and enforcement, as the law of the state having jurisdiction may require or allow.

Signatures    By signing below, you accept an appointment as our Branch Manager, effective _____7/1/08_____ subject to the terms of this Contract. Electronic, scanned or faxed signatures are acceptable and are deemed to be original, binding signatures for purposes of this Contract.

_____    _____
Branch Manager                      Date

Jay H. Mulein
Printed Name

■ **On behalf of the UNIFI Companies:**
Union Central Life Insurance Company
Ameritas Life Insurance Corp.
Acacia Life Insurance Company
First Ameritas Life Insurance Corp. of New York

BY: _____
Arnold D. Henkel
Senior Vice President – Individual Distribution

# Branch Manager
# Schedule of Compensation for:

Manager Name: __Jay H Mulein__

Effective Date: __07/01/2008__

During the term of the Manager's employment, and subject to the terms of the Contract:

1. The Company shall pay the Manager the greater of:

    A. An annualized salary of $ __See Amendment To Branch Manager Contract__, or

    B. The sum of (1) First Year Overrides of 11.67% on Excel Accumulator ABR and 20% on all other Individual Life and Disability First Year Commissions by producers assigned to the agency, and (2) the difference between the Agency Expense Allowables set forth herein and the expenses actually incurred by the agency.

2. Even though salary is stated in annualized terms, the Manager shall have no right to receive compensation after termination of employment.

# AMENDMENT TO BRANCH MANAGER CONTRACT

The Branch Manager Contract dated 7/1/08, is hereby amended as follows:

1. Your starting salary will be $18,000 per year. Even though the salary will be stated in annualized terms, this does not guarantee payment of salary if the agreement is terminated for any reason. Upon termination for any reason, whether or not for cause, your salary will cease.
2. We will credit your entity with an enhanced revenue credit on Life and DI FYC, based on the schedule below (000s):

    | Life & DI Revenue Credit | Months 1-12 L&DI FYC | Months 13-24 L&DI FYC | Months 25-36 Life & DI FYC |
    |---|---|---|---|
    | 140% | 0-250 | 0-500 | 0-1,000 |
    | 150% | 251-500 | 501-1,000 | 1,001-2,000 |
    | 160% | Above 500 | Above 1,000 | Above 2,000 |

    
    Initial

    * Brokerage contracted agents are credited at a constant 138%.
    All other UNIFI products will receive a revenue credit in accordance with the schedules found in the Branch Manager Contract (Exhibit 1).
3. You will devote your best efforts to the establishment and maintenance of a Branch Office Agency satisfactory to the Company and not engage in other activities that, in our opinion, detract from these efforts. Subject to these requirements, you will be permitted to represent other carriers in order to sell insurance and financial services products and services not offered by the UNIFI Companies. Our approval shall not be unreasonably withheld.
4. You will convert to a UNIFI General Agent Contract (Exhibit 2) on or before 36 months from the effective date of your Branch Manager's Contract.
5. Based upon mutually agreed upon revenue and expense assumptions, you shall operate said entity as the Union Central Branch manager.
   We will use the revenue and expense assumptions in a financial model (Exhibit 3), which will be provided to you monthly, as a benchmark against which your performance shall be measured.
   We will furnish you with a monthly profit and loss statement.
   Management compensation, expense allowance and other agency paid expenses will be included.
   The cumulative investment toward said entity shall not exceed $75,000.
6. We will review the results versus benchmarks on a quarterly basis. We will use the monthly statements and quarterly meetings to work with you to help you achieve mutually acceptable results.
7. We will make available a line of credit to you to help with monthly cash flow for the 36 months starting with the effective date of your Branch Manager Contract.
   The line of credit shall not exceed $50,000. You may access up to $25,000 in any given month. Said line of credit shall be considered a loan to you personally and shall be secured by a promissory note (Exhibit 4).
8. During the term of the Branch Manager Contract, you may be entitled annually to a mutually agreed upon portion of the net profit or shorter periods, by mutual agreement.
9. Upon termination of the Branch Manager Contract at the end of the third year, if it is determined there is a net profit, we will pay you said net profit within 30 days of the end of the Branch Manager Contract.

If it determines there is a net loss at the end of the third year, you will repay this within a negotiated period from the end of the Branch Manager Contract.
10. At our option, we may utilize other compensation payable to you, or pursue other legal remedies, to offset any loss.
11. Upon termination of the Branch Manager Contract, you will have the option of purchasing the office at a price to be mutually agreed upon by the parties.
12. You are not currently subject to a non-compete agreement with your former employer or with any other entity or entities. You agree to abide by any and all continuing obligations entered into with your former employer, including but not limited to confidentiality, to not disclose any trade secrets of your former employer, and to indemnify and hold the UNIFI Companies harmless from any claims, demands, causes of action, costs, or attorneys fees incurred by the UNIFI Companies arising out of or related to your affiliation or employment with any other entity or employer.
13. The Branch Manager Contract and this Amendment constitute the entire understanding between the parties relating to the transaction referred to herein. Each party acknowledges that, in entering into the Branch Manager contract and this Amendment, he or it has not relied on any representation, warranty, collateral contract or other assurance, except those set out in the Branch Manager Contract and Amendment.

Jay H. Mylein

Date: _____

The Union Central Life Insurance Company,
A UNIFI Company

Kevin O'Toole, Senior Vice President,
Agency Distribution

Date: 07/02/08

Arnold S. Henkel, Senior Vice President,
Distribution

Date: 07/02/08